Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMUEL N. LEVIN, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| BENEFYTT TECHNOLOGIES, INC., PAUL E. AVERY, ANTHONY J. BARKETT, PAUL GABOS, ROBERT MURLEY, JOHN FICHTHORN, GAVIN SOUTHWELL, and PEGGY B. SCOTT, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Samuel N. Levin, TTEE [as Trustee] U/W Ellen Blum Levin, ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.     This is an action against Benefytt Technologies, Inc. ("Benefytt" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their

violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Benefytt by Daylight Beta Parent Corp. ("Parent") and Daylight Beta Corp. ("Merger Sub," and together with Parent, "Daylight").[1]

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] Parent and Merger Sub are affiliated with Madison Dearborn Partners, LLC ("Madison").

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Benefytt's common stock.

7.      Defendant Benefytt is a health insurance technology company that primarily engages in the development and operation of private e-commerce health insurance marketplaces, consumer engagement platforms, agency technology systems, and insurance policy administration platforms in the United States. The Company is incorporated in Delaware. The Company's principal executive offices are located in Tampa, Florida. According to the Company, its common stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol, "BFYT." On March 6, 2020, the Company announced its name change from Health Insurance Innovations, Inc. to Benefytt.

8.      Defendant Paul E. Avery ("Avery") is a director of the Company.

9.      Defendant Anthony J. Barkett ("Barkett") is a director of the Company.

10.     Defendant Paul Gabos ("Gabos") is Chairman of the Board of the Company.

11.     Defendant Robert Murley ("Murley") is a director of the Company.

12.     Defendant John Fichthorn ("Fichthorn") is a director of the Company.

13.     Defendant Gavin Southwell ("Southwell") is the Chief Executive Officer ("CEO"), President, and a director of the Company.

14.     Defendant Peggy B. Scott ("Scott") is a director of the Company.

15.     Defendants Avery, Barkett, Gabos, Murley, Fichthorn, Southwell and Scott are collectively referred to herein as the "Individual Defendants."

16.     Defendants Benefytt and the Individual Defendants are collectively referred to herein as the "Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**A.  The Proposed Transaction**

17.    On July 13, 2020, Benefytt issued a press release announcing that it had entered into a definitive agreement to be acquired by funds affiliated with Madison through a tender offer of $31.00 per share. The press release states, in pertinent part:

**Benefytt Technologies, Inc. to be Acquired by Madison Dearborn Partners**

**Tender Offer of $31.00 per Share to be Commenced in Coming Days to Complete All-Cash Transaction**

July 13, 2020 07:00 ET | **Source:** Benefytt Technologies, Inc.

TAMPA, Fla., July 13, 2020 (GLOBE NEWSWIRE) -- Benefytt Technologies, Inc. (NASDAQ: BFYT) ("Benefytt") ("the Company"), a health insurance technology company and leading distributor of Medicare-related health insurance plans, today announced that it has entered into a definitive agreement to be acquired by funds affiliated with Madison Dearborn Partners, LLC (the "MDP Funds"), a leading private equity firm based in Chicago that has deep experience in the insurance technology and health care industries. The all-cash transaction is structured as a tender offer of $31.00 per share that will commence in the coming days, followed immediately by a merger.

Gavin Southwell, Benefytt's Chief Executive Officer and President, said, "Over the past year, our Board of Directors and management team have evaluated numerous strategic options to maximize shareholder value and to position the company for its strategic transformation. Following this comprehensive review, we believe Madison Dearborn is the right partner to deliver compelling and certain value to our shareholders. This transaction marks a new stage for the entire Benefytt team, and we look forward to moving ahead with a focus on continuing to offer innovative, technology-enabled services to the people and markets we serve."

The announced transaction with the MDP Funds is the culmination of a process led by Benefytt's Board of Directors since July 26, 2019, to explore, review and evaluate a range of potential strategic alternatives for the Company. The tender offer price per share represents a 59% premium over the 30-day volume-weighted average price per share of Benefytt's common stock through the close of trading on July 10, 2020.

The Company's Board has unanimously approved the acquisition of the Company by the MDP Funds. Following the successful tender of at least a majority of the then outstanding shares of the Company's common stock, the MDP Funds will

acquire any remaining outstanding shares of Benefytt's Class A common stock through a merger at a per share price equal to the tender offer price.

"Benefytt's technology-driven model has positioned it well in the evolving Medicare market and we believe we can help Gavin and his team continue to advance Benefytt's product offering and service model," said Vahe Dombalagian, a Managing Director on the Madison Dearborn Financial & Transaction Services team. "Our team has built an extensive resource network and brings significant industry experience, which we look forward to leveraging to support Benefytt. We are pleased to be able to help the Benefytt team fulfill the Company's mission to connect consumers with health insurance and supplemental products that provide people with added security and peace of mind."

Following completion of the transaction, Benefytt will become a private company, substantially owned by the MDP Funds, and will no longer be traded on Nasdaq Global Select Market. Benefytt's management team, including Chief Executive Officer Gavin Southwell, is expected to continue to lead the Company. The Company plans to maintain its operations in Tampa, Fla.

The closing of the acquisition is expected to occur in the third quarter of this year, subject to the successful tender of a majority of the then outstanding shares of Benefytt's common stock and the satisfaction of other customary closing conditions.

Weil, Gotshal & Manges LLP is serving as legal advisor to Benefytt and BofA Securities is acting as exclusive financial advisor. Kirkland & Ellis LLP is serving as legal advisor to the MDP Funds and SunTrust Robinson Humphrey, Inc. is acting as financial advisor. Committed financing for the transaction is being provided by Truist Bank.

**About Benefytt Technologies, Inc.**

Benefytt Technologies, Inc. is a health insurance technology company that primarily engages in the development and operation of private e-commerce health insurance marketplaces, consumer engagement platforms, agency technology systems, and insurance policy administration platforms. By leveraging existing and emerging platforms and Technologies, the Company offers a range of Medicare-related insurance plans from many of the nation's leading carriers as well as other types of health insurance and supplemental products that meet the needs of consumers.

**About Madison Dearborn Partners, LLC**

Madison Dearborn Partners, LLC ("Madison Dearborn") is a leading private equity investment firm based in Chicago. Since Madison Dearborn's formation in 1992, the firm has raised aggregate capital of over $26 billion and has completed over

140 investments. Madison Dearborn invests across five dedicated industry verticals, including financial and transaction services; health care; basic industries; business and government software and services; and telecom, media and technology services. For more information, please visit **www.mdcp.com**.

18.     On July 24, 2020, Benefytt filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

19.     The Solicitation Statement, which recommends that Benefytt shareholders tender their shares to Merger Sub in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by Benefytt's financial advisor, BofA Securities, Inc. ("BofA"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving BofA.

20.     The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Recommendation of the Company Board; (ii) Benefytt's Reasons for the Offer and the Merger; (iii) Projected Financial Information; and (iv) Opinion of Benefytt's Financial Advisor.

21.     The tender offer in connection with the Proposed Transaction is set to expire at one minute after 11:59 p.m., Eastern Time, on August 20, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1.   **Material Omissions Concerning Benefytt's Financial Projections**

22.   The Solicitation Statement omits material information concerning Benefytt's financial projections.

23.   The Solicitation Statement provides a purported summary of the Company's February 2020 Projections and July 2020 Projections (the "Projections").

24.   The Solicitation Statement, however, fails to disclose the following concerning the Projections: (1) all line items used to calculate (i) Adjusted EBITDA, (ii) Pre-Tax Unlevered Free Cash Flow, and (iii) Unlevered Free Cash Flow excl. Earn-Outs and Impact of Tax Attributes; and (2) a reconciliation of all non-GAAP to GAAP metrics.

25.   The disclosure of the aforementioned projected financial information is material because it would provide Benefytt shareholders with a basis to project the future financial performance of Benefytt and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

26.   When a company discloses non-GAAP financial metrics in a Solicitation Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics

calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

27.    Accordingly, in order to bring the Solicitation Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Solicitation Statement not misleading.

28.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Benefytt shareholders.

### 2.    Material Omissions Concerning BofA's Analyses

29.    In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by BofA.

30.    With respect to BofA's "*Selected Publicly Traded Companies Analysis*," the Solicitation Statement fails to disclose the individual multiples and financial metrics of the companies observed by BofA in its analysis, as well as a sufficient explanation of the reasons for selecting these companies.

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited August 4, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

31.     With respect to BofA's "*Selected Precedent Transactions Analysis*," the Solicitation Statement fails to disclose the individual multiples and financial metrics of the transactions observed by BofA in its analysis, as well as a sufficient explanation of the reasons for selecting these transactions.

32.     The Solicitation Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*": (1) the discounted unlevered, after-tax cash flows utilized by BofA in its analysis including all underlying line items; (2) the terminal values; (3) the individual inputs and assumptions underlying the (i) discount rate range of 8.5% to 11%, and (ii) perpetuity growth rate range of 2% to 3%; (4) the net debt of the Company; and (5) the number of fully-diluted shares outstanding.

33.     The valuation methods, underlying assumptions, and key inputs used by BofA in rendering its purported fairness opinion must be fairly disclosed to Benefytt shareholders. The description of BofA's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Benefytt shareholders are unable to fully understand BofA's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Benefytt shareholders.

### 3.   Material Omissions Concerning Potential Conflicts of Interest Involving BofA

34.     The Solicitation Statement omits material information concerning potential conflicts of interest involving BofA.

35.     The Solicitation Statement states that, from July 1, 2018 through June 30, 2020, BofA and its affiliates derived aggregate revenues from: (1) the Company and certain of its affiliates of approximately $2 million for investment and corporate banking services; and (2) Madison and certain of its affiliates and portfolio companies of approximately $130 million for investment and corporate banking services.

36.     The Solicitation Statement, however, fails to disclose the services BofA performed and compensation it received or expects to receive for work performed through July 12, 2020, the date of BofA's written fairness opinion.

37.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

38.     The omission of the above-referenced information renders the Solicitation Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to Benefytt shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

39.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

40.     Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

41.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

42.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

43.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

44.     Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

45.     By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

46.     Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
**For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder**
**<u>Against All Defendants</u>**

47.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.     Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

49.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

50.     SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

51.     In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

52.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

53.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted

information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

54.    Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

55.    The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

56.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.    The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

58.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly

owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the unanimous recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

60.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.      Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: August 5, 2020                      Respectfully submitted,

                                           **HALPER SADEH LLP**

                                           By: /s/ Daniel Sadeh
                                           Daniel Sadeh, Esq.
                                           Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                           375 Park Avenue, Suite 2607
                                           New York, NY 10152

Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*